OPINION OF THE COURT
Lawrence E. Kahn, J.
In the above-entitled matrimonial action, plaintiff seeks a judgment dissolving the bond of matrimony existing between the parties and granting him judgment of divorce based upon the grounds of cruel and inhuman treatment. He seeks further relief with respect to equitable distribution of the parties’ assets, custody, child support, income tax exemptions and medical insurance. Defendant has cross-moved for an order pursuant to CPLR 2201 staying all proceedings pending completion of discovery, compelling plaintiff to answer certain interrogatories and to appear for an examination before trial, together with counsel fees and costs on this motion.
Defendant’s amended verified answer neither admits nor denies those specific allegations of plaintiff’s complaint which assert that during the past two years, until March of 1982, the defendant practiced a course of cruel and inhu *937 man treatment upon the plaintiff which endangered his physical and mental well-being, so as to render it improper and unsafe for him to cohabitate with her.
CPLR 3018 (subd [a]) requires a party to deny statements known or believed to be untrue, other than allegations which a party lacks knowledge or information to form a belief. All other statements of a pleading are deemed admitted. Thus, defendant is deemed to have admitted those allegations above set forth as alleged by plaintiff in his action for a divorce, based upon cruel and inhuman treatment. Concerning the other issues such as equitable distribution, maintenance, child support and custody, substantial questions of fact are presented.
With the amendment of CPLR 3212", since January 1, 1979, summary judgment has been available to either a plaintiff or defendant in a matrimonial action (Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:7, 1981-1982 Pocket Part, p 92). At issue herein is whether partial summary judgment divorcing the parties should be granted, with a severance of the remaining issues of equitable distribution, custody, etc. On this issue, several factual variations are possible. First, the parties might agree to a bifurcated procedure which determines the issue of divorce separately from other ancillary issues. Second, a party might move for “reverse” summary judgment, over the opposing party’s objection, for summary judgment in favor of the opposing party. Finally, a party might move for summary judgment based upon his or her own cause of action as set forth in the pleading.
On the first question, the Third Department, Appellate Division, has held that “frequently in divorce actions the divorce question is determined separately from the other ancillary issues presented, and we have no objection to such bifurcated procedures when, as is generally the case, they are undertaken with the consent and agreement of both contesting parties.” (Nemia v Nemia, 90 AD2d 871, 872.) However, on the second issue, i.e., “reverse” summary judgment, they have stated that when “one party to a divorce action moves, over the opposing party’s objection, for summary judgment of divorce in favor of the opposing *938 party and ancillary matters such as equitable distribution of the marital assets and maintenance and support have not yet been decided, it is our judgment that such a motion should be denied.” (Nemia v Nemia, supra, p 872; emphasis supplied.)
The case at bar involves the third issue of whether a party to a divorce action may move for partial summary judgment on his or her own cause of action for divorce, without consent of the opposing party, bifurcating other ancillary issues presented. Of course, on such a motion for partial summary judgment, the issue of a consensual divorce is no more paramount than in any uncontested matrimonial. The burden is still upon movant to establish the merits of the cause of action and the requirements of subdivision (6) of section 170 of the Domestic Relations Law must still be satisfied.
Bifurcation is a procedural device which should be readily utilized in the interest of justice depending on the facts and circumstances of a particular case and the nature of the action itself. Some cases would more clearly benefit from bifurcating certain issues. In making such a determination, the court must weigh several factors, including whether such bifurcation would reduce hardship to the parties; speed a just determination; and help clarify the various issues. Bifurcation should not be granted without the furtherance of such factors or, even worse, when opposite effects may result.
At first blush, a matrimonial action would appear to be most susceptible to bifurcation. In most such actions, a point is reached where there is no real dispute over ending the marriage itself. Most divorce actions could be settled if it were not for the task of resolving the ancillary issues such as custody, visitation, support and equitable distribution. However, this court cannot ignore the practical effects of bifurcation in a typical matrimonial action. The purposes of utilizing this device are to facilitate court proceedings, reduce delay and help dispose of a case in its entirety. If the effect of bifurcation would be to exacerbate or prolong matrimonial litigation, then it should not be utilized even though the nature of the action lends itself to such a procedure.
*939 The granting of a divorce is frequently utilized as a means of leverage to enforce a resolution of economic issues. More often than not, one of the parties is anxious to end the marriage while the other is more reluctant to terminate the relationship. The delicate balance between this eagerness and reluctance is often tipped by economic considerations. While it is apparent that the grounds for divorce can be often separated from the economic disputes, they are very much interrelated. The prospect of terminating a marriage contract without first resolving the parties’ future economic security will unnecessarily add to the court’s already overburdened caseload.
Bifurcation is justifiable when it simplifies or clarifies the entire action and possibly eliminates the need for a second proceeding. Thus, in tort actions, first resolving the liability issue may have the effect of eliminating the need for a second trial on damages in the event no liability is found. As a result, bifurcation is an attractive device in many tort proceedings. But such is not the case in matrimonial disputes. Resolving the divorce cause of action initially cannot eliminate the need for a further trial on the economic issues. In fact, it is likely that both bifurcated proceedings could become bitterly protracted. On the other hand, nonbifurcation in matrimonial actions will result in one proceeding which has a better chance of resolution because of the interaction of all disputed factors upon each other. For these reasons, plaintiff’s motion for bifurcation must be denied.
This department has recently abandoned the doctrine of Matter of Frye v Truhn (68 AD2d 989), whereby it previously held that an award of counsel fees in a matrimonial action could only be justified to insure that an indigent wife had legal representation. “The court to whom application for legal fees is made must examine carefully the circumstances of the case and financial circumstances of each of the parties and then exercise its discretion * * * each case will be sui generis.” (Walsh v Walsh, 92 AD2d 345, 347.) A review of the affidavits in the case at bar does not establish that defendant has actually paid any counsel fees to date. Given this fact, together with defendant’s admitted assets and income, this court is of the opinion that an award of attorney’s fees is not warranted.
*940 Finally, questions of fact exist with respect to the issues of equitable distribution, custody, maintenance and child support, thus preventing the granting of any motion for summary judgment with respect thereto (Falk v Goodman, 7 NY2d 87, 91). “ ‘[I]ssue-finding, rather than issue-determination, is the key to the procedure’” (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404).
Plaintiff’s motion shall be denied. Defendant’s cross motion for an order pursuant to CPLR 3124 compelling plaintiff to answer interrogatories heretofore served, shall be granted to the extent that plaintiff shall so comply within 20 days of service of an order in conformance herewith, with notice of entry. Defendant’s cross motion for an order pursuant to CPLR 3124 compelling plaintiff to appear for a deposition in accordance with the notice to take deposition heretofore served by defendant, shall be granted to the extent that plaintiff shall make himself available for said examination at the Rensselaer County courthouse at a time and date to be agreed upon by the parties, with said examination to take place within 60 days of service of an order with notice of entry, in conformance herewith. In all other respects, defendant’s cross motion shall be denied.